Susan M. Murphy (SBN 185335)
ADVOCATE LEGAL
3055 Wilshire Boulevard Suite 1200
Los Angeles, CA 90010
Telephone:  (213) 387-1828
Facsimile:    (800) 878-7336
susan@advocatelegal.org

ATTORNEY FOR PLAINTIFF
JUAN G. PEÑA

## IN THE UNITED STATES DISTRICT COURT
## STATE OF CALIFORNIA - WESTERN DISTRICT

| | |
|---|---|
| JUAN G. PEÑA, an individual,<br><br>      Plaintiff,<br>   v.<br><br>GRAVITY SEGREGATION  LLC, a limited liability corporation; CHICAGO TITLE COMPANY; TIMOTHY D. THURMAN, an individual; CHRISTOPHER C. CARR, an individual; KAREN  J. HASSLOCK, an individual and DOES 1 through 5, inclusive.<br><br>      Defendants<br><br>_____ | **CASE NO:  2:18-cv-175**<br><br>**VERIFIED COMPLAINT FOR:**<br><br>1.  **QUIET TITLE;**<br>2.  **SLANDER OF TITLE;**<br>3.  **VIOLATION OF THE TRUTH IN LENDING ACT 15 U.S.C. 1601 et al;**<br>4.  **LACK OF STANDING TO FORECLOSE;**<br>5.  **CONVERSION [Violation of California Civil Code §3336];**<br>6.  **VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200, et seq.;**<br><br>   **JURY TRIAL DEMANDED** |

## **JURISDICTION**

This Court has jurisdiction over this action under 28 U.S.C. §1331, which confers original jurisdiction on federal district courts to hear suits arising under the Constitution, laws, or treaties of the United States including those under the Truth in Lending Act (TILA) 15 U.S.C. §1601 et seq which requires disclosures for all new mortgages incurred against a borrower's primary residence.  This Court has supplemental jurisdiction under 28 U.S.C. §1367(a) to hear the pendent state law claims that arise from the same case or controversy under Article III of the United States Constitution.

This Court has Personal Jurisdiction over the parties because Defendants work, reside and/or systematically do business in the County of Los Angeles and Plaintiff resides in this district at the property at issue in this complaint which is a multi-unit property known as 3811 Grand Avenue Huntington Park, California 90255 (hereafter "the Grand Avenue Property"). *Cal. Code of Civil Procedure §760.040(a).*  The Grand Avenue Property is Plaintiff's principle residence where he resides with his mother and father.  The legal description of the Grand Avenue property is follows:

THE EAST 50 FEET OF LOT 124 IN TRACT 2599, IN THE CITY OF HUNTINGTON PARK AS PER MAP RECORDED IN BOOK 26, PAGE 50 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THE SOUTHERLY 25 FEET THEREOF, DEEDED TO THE CITY OF HUNTINGTON PARK FOR STREET PURPOSES. ALSO EXCEPT THE NORTHERLY 125 FEET THEREOF.

APN: 6214-008-017." (EX. A [Grant Deed] & EX. B [Title Report].)

## **DATE OF DETERMINATION**

Plaintiff requests that the date of the judicial determination sought be the date of the filing of the instant Complaint. (*Cal. Code of Civil Procedure §761.020(d).*)

## **INTRODUCTION**

Plaintiff Juan G. Peña (Plaintiff) is before this Court because on November 27, 2017 Plaintiff was surprised to receive a NOTICE of Default from the County Recorder recorded by Defendant GRAVITY SEGREGATION LLC (GRAVITY) against the Grand Avenue property in the amount of two-hundred-fifty-thousand-dollars ($250,000.00). (EX. C.) Plaintiff was surprised to receive this NOTICE OF Default because it referenced a Deed of Trust recorded one (1) month earlier on October 27, 2017 in favor of Defendant GRAVITY for two-hundred-fifty-thousand-dollars ($250,000.00) that Plaintiff had not incurred and had never seen before.[1] (EX. D.)   *Also surprising* - the Deed of Trust recorded October 27, 2017

---

[1] Los Angeles County Recorder Document number 20171236130.

appears on its face to be a "business purposes only" loan for a rental property

Plaintiff also owns which is 700 Wildwood Lane San Dimas California 91773 (the

Wildwood Lane property). (EX. D p.1.)

The face of the recorded Deed of Trust at issue in this complaint has the

property address for the Wildwood Lane property on the face page along with a

third (3rd) reference to "that real property located in Redding, California.[2]" (EX.D

¶1.1].)  This Deed of Trust in favor of Defendant GRAVITY, which *appears* to

encumber the Wildwood Lane property, has attached as "exhibit A" the *property*

*description* of the Grand Avenue Property which caused it to be recorded by the

Los Angeles County Recorder against the Grand Avenue property. (EX. D Exh.

A.) This *unusual* Deed of Trust was signed and notarized a full year before on July

29, 2016, but it was not recorded until October 27, 2017. (EX. D.)   It describes

itself as a "business purposes only" loan, but it is recorded against Plaintiff's

primary residence thereby entitling Plaintiff to TILA disclosures and this Court's

jurisdiction. (EX. D; 15 U.S.C. §1601 et seq.)  It also contains a forged signature

for Plaintiff. [3] (EX. D.)

---

[2] The Grand Avenue property is located in Huntington Park (Los Angeles County 90255),
The Wildwood Lane property is located in San Dimas (Los Angeles County 91733) and
Redding California is north of San Francisco (Shasta County 96001-96003)

[3] Plaintiff's signature does not connect between his first name, middle initial and last
name the way the forged signature does and this is apparent by his actual signature (EX.
R) and the forged signature (EX. Y).

Besides being VOID on its face for the three (3) different property addresses, and Plaintiff's forged signature, this Deed of Trust *also* contains a forged notary signature for notary Ricardo Magno (MAGNO) and a fraudulently obtained notary seal for MAGNO, notarized on July 29, 2017, a day when MAGNO did not notarize any deeds of trust. (EX. D; Dkt. 2[Decl. Magno ¶s 4-5].) What *was* happening on July 29, 2017 was that Plaintiff was evicting convicted felon, Defendant Timothy Thurman (THURMAN) from the Wildwood Lane property --July 29, 2017 being the date of Defendant THURMAN's answer to the Unlawful Detainer (UD) complaint.[4] (EXs. E & F.)  Defendant THURMAN had lived in the Wildwood Lane property since April 2008, at first renting it from Plaintiff's mother and father who owned the Wildwood Lane property from October 23, 1998 until July 9, 2015.[5] (EXs. G & H.)

Plaintiff's parents met Defendant THURMAN in 2008 when a friend, Su Soni, referred them to Trinity Law Associates (TRINITY) to help them save another property they owned in Cherry Valley (the Cherry Valley property) that was then in default to Washington Mutual Bank FSB (WAMU).[6]  Then attorney THURMAN was running a mass-tort litigation scam through TRINITY that

[4] California State Bar Court Recommendation of Disbarment available at: http://members.calbar.ca.gov/courtDocs/09-C-17186-1.pdf
[5] Plaintiff's parents took title to the Wildwood Lane property in 1998 as "Juan P. Castillon and Ana Rosa P. Castillon, Husband and Wife and Juan G. Pena, a single man, all as joint tenants and there was a spousal deed to Ana alone in 2006.
[6] 40238 Brookside Avenue, Cherry Valley CA 92223

preyed on immigrants by convincing them to stop paying their mortgages so as to pay the law firm for "class action" litigations – in Plaintiff's parents' case against WAMU.[7] While representing Plaintiff's parents, Defendant THURMAN became aware of the multiple pieces of real estate that the family owned including the Wildwood Lane property. (EX. G.)

Plaintiff's parents lost their Cherry Valley property to foreclosure, but Defendant THURMAN maintained a friendship with Plaintiff's mother sufficient to get her to agree to rent him the Wildwood Lane property when it became vacant around April 1, 2008. That same year (2008) Defendant THURMAN went to prison on a felony conviction for forging a judge's signature on foreclosure documents and was eventually disbarred.[8]  During the months that Defendant THURMAN was in prison Defendant CARR lived alone in the Wildwood Lane property, but, at all times, both Defendants THURMAN and CARR paid sporadic rent, causing Plaintiff's mother to be in default beginning in 2008, shortly after Defendants moved in.

On July 9, 2015, after years of promises from Defendant THURMAN that "the big money is coming," Plaintiff's mother was facing foreclosure or short sale

[7] Los Angeles Times, "Center accuses law firm of defrauding Korean immigrants," March 10, 2010 by Teresa Watanabe. Available at:
http://articles.latimes.com/2010/mar/10/local/la-me-korea-scam11-2010mar11; *See also:* ABC7 Eyewitness News online, "Lawsuit alleges firm targeted Korean immigrants," March 11, 2010, by Miriam Hernandez. Available at: http://abc7.com/archive/7326495/
[8] See F.N. 4

of the Wildwood Lane property. (EX. H.)  Defendant THURMAN fed that information to his friend (from church) Francis H. Brewster (BREWSTER) so that she could purchase the Wildwood Lane property at short sale from Plaintiff's mother. (EX. H.) Defendant THURMAN then informed Plaintiff, less than a year later, that BREWSTER would sell the Wildwood property back to Plaintiff for a profit of around seventy-five thousand dollars ($75,000.00).[9]  When Plaintiff said he could not afford it, Defendant THURMAN got another (church) friend Defendant Karen J. Hasslock (HASSLOCK) to co-sign a mortgage with Plaintiff. (EX. I.)  Defendant HASSLOCK agreed, asking only that Plaintiff get the deed out of her name and the mortgage refinanced as soon as possible. (EXs. I & J.)

From the time Plaintiff purchased the Wildwood Lane property on February 8, 2016, Defendants THURMAN and CARR paid no rent.  On July 29, 2016, Defendant THURMAN claimed (by affirmative defense) in his UD answer that this was because Plaintiff did not have clear title to the Wildwood Lane property. (EX. F.)  On August 15, 2016, Defendant THURMAN *also* attempted to deed the Wildwood Avenue property to himself which became a wild (VOID) deed since Plaintiff had already recorded the grant deed from HASSLOCK and him to him

---

[9] Plaintiff's mother sold the property to BREWSTER for three-hundred-fifty-thousand-dollars ($350,000.00) on July 9, 2015 (EX. Q) and BREWSTER sold it to Plaintiff and his co-signer Karen J. Hasslock for four-hundred-twenty-five-thousand dollars ($425,000.00) on February 8, 2016 (EX. R).

alone on May 6, 2016.[10] (EXs. K & L.) Except for the wild deed, that was the last

Plaintiff heard from Defendant THURMAN until now. (EX. L.)

## THE PARTIES

1.      Plaintiff is a single man employed by Federal Express who holds title to the

Grand Avenue property since September 19, 2014 by grant deed as "a single man."

(EXs. A & B.)  The Grand Avenue property was originally owned by Plaintiff's

grandparents and his parents who acquired the property by Grant Deed on April 2,

1976. (EX. M.)  On September 19, 2014, Plaintiff also incurred his current

mortgage on the Grand Avenue property in favor of U.S. Bank Trust Company,

National Association (U.S. BANK) for two-hundred-seventy-five thousand dollars

($275,000.00). (EX. N.)

2.      Defendant Gravity Segregation LLC (GRAVITY) is a Utah Corporation

active and in good standing as of April 24, 2013 in Utah with an address of 531 E

770 N, Orem UT 84097-4102.  Plaintiff could not locate an agent for service of

process for Defendant GRAVITY in California and there is no evidence that

Defendant GRAVITY is registered as a foreign corporation authorized to do

business in California. Plaintiff is informed, believes, and thereupon alleges that

---

[10] The actual deed was from HASSLOCK to HASSLOCK, THURMAN and CARR (EX. W).

Defendant GRAVITY operates alongside Gravity Segregation Capital which is a bridge lender providing short-term funding.[11]

3.      Defendant Chicago Title Corporation (CHICAGO TITLE) is a corporation located at 700 Flower Street, Suite 800 Los Angeles, California 90017.  On November 27, 2017 Defendant GRAVITY recorded a SUBSTITUTION of Trustee from the original trustee on the Deed of Trust at issue which was McDonald Fielding, PLLC, a Utah professional limited liability company with an address at 175 W. Canyon Crest Road. Suite 205 Alpine UT 84004 to Defendant CHICAGO TITLE. (EXs. D & O.)  The *Foreclosure Department* of Defendant CHICAGO TITLE, the entity that recorded the NOTICE of Default against the Grand Avenue Property, is located at 560 Hospitality Lane, San Bernardino, CA 92408. (EX. C.)  Defendant CHICAGO TITLE is not being sued for damages, and is sued solely on the basis of seeking injunctive relief to rescind the notices recorded against Plaintiff.

4.      Defendant Timothy D. Thurman (THURMAN) is a convicted forger and a disbarred attorney, having been disbarred over a felony conviction for forging a judge's signature.[12]  Defendant THURMAN occupied the Wildwood Lane property from on or about April 2008 until on or about August 2016 and Plaintiff

---

[11] See website for Gravity Capital LLC available at: http://www.gravitycapllc.com/
[12] California State Bar Court Recommendation of Disbarment available at:
http://members.calbar.ca.gov/courtDocs/09-C-17186-1.pdf

received a default UD judgment against Defendant THURMAN on October 4, 2016. (EX. P.)  Defendant THURMAN appears on a (wild) deed recorded on August 15, 2016 against the Wildwood Lane property from Defendant HASSLOCK to Defendants THURMAN, CARR, and HASSLOCK. (EX. L.) Defendant THURMAN's current address is believed to be 5870 Melrose Avenue Suite 3-336, Los Angeles, CA 90038.

5.      Defendant Christopher Charles (CARR) also occupied the Wildwood Lane property from on or about April 2008 to August 2016 and Plaintiff also received a default UD judgment against Defendant CARR on October 4, 2016. (EX. P.)  Defendant CARR appears with Defendant THURMAN on a (void/wild) deed recorded on August 15, 2016 granting the Wildwood Lane property from Defendant HASSLOCK to Defendants THURMAN, CARR, and HASSLOCK. (EX. L.)   Defendant CARR's last known address is believed to be 1920 Marengo Street, Los Angeles, CA 90033 (Exodus Recovery Center).

6.      Defendant Karen J. Hasslock (HASSLOCK) is an individual that lives at 317 E. New Haven Lane, Glendora California 91740-5652.  On February 8, 2016, Defendant HASSLOCK acquired title to the Wildwood Lane property with Plaintiff as joint tenants and was a co-borrower with Plaintiff on a deed of trust in the amount of four-hundred-three-thousand-seven-hundred-fifty thousand dollars

and no cents ($403,750.00) incurred against the Wildwood Lane property. (EXs. I & J.)  Defendant HASSLOCK also appears on a (void/ wild) deed recorded against the Wildwood Lane property from HASSLOCK to Defendants THURMAN, HASSLOCK, and CARR. (EX. L.)   Defendant THURMAN introduced Defendant HASSLOCK to Plaintiff as a "friend from church."

## FACTUAL ALLEGATIONS

7.     On April 2, 1976, Plaintiff's mother, Ana Rosa P. Castillon, his father, Juan P. Castillon (Plaintiff's parents), his grandfather, Jesus Ramirez, his grandmother Maria Ramirez (Plaintiff's grandparents), and Plaintiff's Aunt Sylvia Lopez Ramirez acquired the Grand Avenue property by Grant Deed as joint tenants. (EX. M.)  The property is a multi- unit property and Plaintiff's grand-parents occupied unit A from 1975 until the death of Plaintiff's grandfather (Jesus Ramirez) on March 31, 2003 and Plaintiff's grandmother (Maria Ramirez) on May 15, 2012.

8.     On or about March 15, 1984 Plaintiff´s parents and his grandparents, as equal co-borrowers, incurred a Deed of Trust (Los Angeles County Recorder no. 840362653) for the Grand Avenue property in the amount of one hundred thirty thousand dollars ($130,000.00) in favor of Great Western Savings (GREAT WESTERN) as beneficiary. (EX. Q.)  On or about 1997 GREAT WESTERN became defunct and was acquired by WAMU and thereafter Plaintiff's parents and

grandparents made the mortgage payments to WAMU and eventually to JP MORGAN CHASE (CHASE).

9.  On or about October 23, 1998 Plaintiff's parents purchased the Wildwood Lane property. (EX. G.)  The grant deed was to Plaintiff's mother (Ana Rosa P. Castillon) his father (Juan P. Castillon) and Plaintiff as joint tenants. (EX.G.)  The family moved into the Wildwood property in 1998.

10.  On March 31, 2003 Plaintiff's grandfather (Jesus Ramirez) died and Plaintiff's first cousin Claudia Navar (CLAUDIA) began caring for Plaintiff's grandmother (Maria Ramirez).

11.  On August 15, 2003 CLAUDIA recorded a Grant Deed from Plaintiff's grandmother (Maria Ramirez) to her. (EX. R.) Plaintiff's grandmother continued to occupy the property which was then owned by CLAUDIA (1/3), Plaintiff's mother (1/3) and Plaintiff's father (1/3). (EX. R.)

12.  Around January 10, 2008, Plaintiff's parents met Defendant THURMAN when they went to Trinity Law Firm (TRINITY), on the advice of a friend Su Soni to try and save the Cherry Valley property which was then in foreclosure. Defendant THURMAN, through TRINITY, was then aggressively promoting a "class-action" scam to Korean homeowners.[13] Defendant THURMAN convinced Plaintiff's parents to pay him to litigate a "class action" lawsuit

---

[13] See Footnote 7.

against WAMU which would save the Cherry Valley property.  At this time, Defendant THURMAN became well-acquainted with Plaintiff's family's assets.

13.     Around April 1, 2008 Plaintiff's parents moved from the Wildwood Lane property to 523 West Third Street San Dimas California 91773 (the West Third Street property) to live with their daughter who had just had a baby. Defendant THURMAN maintained a friendship with Plaintiff's mother and asked her if he could rent the Wildwood Lane property since he had to move from his prior rental and Plaintiff's mother agreed.

14.     Around October 1, 2008 Defendant THURMAN went to jail, and TRINITY closed its doors.[14]  Defendant CARR remained at the Wildwood Lane property.

15.     Around April 1, 2009 Defendant THURMAN returned from jail and moved back into the Wildwood Lane property for his six (6) months house arrest.  Plaintiff's mother was already in default on the Wildwood Lane property because there was no rental income coming from Defendants THURMAN and/ or CARR, Defendant THURMAN always promising Plaintiff's mother that "big money was coming."

---

[14] See Footnote 6.

16.     On or about June 18, 2009 Plaintiff's mother lost the Cherry Valley property to foreclosure sale.

17.     On May 15, 2012 Plaintiff's Grandmother died.  At the time she died, Plaintiff's grandmother was occupying Unit A of the Grand Avenue property with her son Jorge Ramirez (JORGE), Plaintiff's uncle.  At this time Plaintiff was living at the West Third Street property in San Dimas with his parents and his sister.

18.     In 2012, after the death of Plaintiff's grandmother, JORGE moved out of Unit A and Plaintiff's parents moved out of the Third Street property and into the Grand Avenue property Unit A.

19.     On or about 2013 Plaintiff moved in with his parents in Unit A to take care of his parents and also to help with upkeep for the multiple units of the Grand Avenue property.

20.     On or about 2013 CLAUDIA attempted to force the sale of the Grand Avenue property and all parties agreed that Plaintiff would "buy out" CLAUDIA since Plaintiff´s parents did not qualify for a refinance.

21.     On or about April 25, 2014, Plaintiff's mother made the last payment on the WAMU mortgage against the Grand Avenue property and CHASE reconveyed. (EXs. S-U.)

22.     On or round May 30, 2014 Plaintiff, CLAUDIA, and Plaintiff's parents entered an escrow whereby CLAUDIA would receive two-hundred-forty-thousand

dollars ($240,000.00) and Plaintiff would incur a mortgage in the same amount to pay her.

23.     On or about July 9, 2014 Plaintiff´s parents (as well as JORGE) all granted their portions of the Grand Avenue property to Plaintiff as a single man.  (EX. V.)

24.     On or about September 19, 2014, pursuant to the escrow, CLAUDIA granted her portion of the Grand Avenue property to Plaintiff as a single man.  (EX. W.)

25.     On or about September 19, 2014 Plaintiff incurred a Deed of Trust to U.S. Bank Trust Company, National Association (U.S. BANK) against the Grand Avenue property in the amount of two-hundred-seventy-five thousand dollars ($275,000.00) which would pay off CLAUDIA and pay escrow costs. (EX. N.)

26.     On July 9, 2015, Defendant THURMAN arranged for his friend BREWSTER to buy the Wildwood Lane property from Plaintiff's mother at short sale for three-hundred-sixty-thousand-dollars ($360,000.00). (EX. H.) Defendants THURMAN and CARR remained as tenants.

27.     On or about November 2015, Defendant THURMAN told Plaintiff that BREWSTER would re-sell him the Wildwood Lane property for four-hundred-twenty-five thousand dollars ($425,000.00), but Plaintiff said he could not qualify for that big a mortgage.   On or about December 2015, Defendant THURMAN offered to help Plaintiff by getting Defendant HASSLOCK to cosign a mortgage

loan with Plaintiff so that Plaintiff could purchase back the Wildwood Lane property.

28.     On or about January 2016, Defendant HASSLOCK agreed to co-sign a loan for the Wildwood Lane property as long as Plaintiff would remove her from the title and refinance the loan as soon as possible after the sale closed in his name alone. (EXs. I & J.)

29.     On February 8, 2016 Plaintiff purchased the Wildwood Lane property from BREWSTER for four-hundred-twenty-five thousand dollars ($425,000.00) with approximately twenty-five thousand dollars ($25,000.00) of his money as a down-payment and a mortgage of four-hundred-three thousand-seven-hundred-fifty-dollars ($403,750.00) with co-signer HASSLOCK. (EXs. I & J.)

30.     On or about February 1, 2016, Defendants THURMAN and CARR did not pay rent for the Wildwood Lane property.

31.     On May 6, 2016 Plaintiff recorded the Grant Deed from HASSLOCK to him in preparation of re-financing. (EX. K.)

32.     On or about May 20, 2016, Plaintiff gave a three (3) day Notice to Defendants THURMAN and CARR and began to evict Defendants by UD trial. (EX. E & F.)

33.     On July 22, 2016 Plaintiff filed and served a UD Complaint on Defendants THURMAN and CARR. (EX. E.)

34.     On July 29, 2016 Defendant THURMAN signed a verified answer to the UD complaint claiming Plaintiff did not have clear title. (EX. F ¶11.)

35.     On August 15, 2016 Defendant THURMAN recorded a (wild) Grant Deed of the Wildwood Lane property from Defendant HASSLOCK to Defendants HASSLOCK, CARR, and THURMAN. (EX. L.)

36.     On September 29, 2016 at 8:30 a.m. Defendant THURMAN and Defendant CARR did not show up for court and Plaintiff received default judgments against both tenants.  (EX. P.)  Defendant THURMAN and CARR vacated the Wildwood Lane property shortly thereafter.

37.     On October 27, 2017 Defendant GRAVITY as lender and Defendant MCDONALD FIELDING as trustee, recorded a Deed of Trust encumbering the Wildwood Lane property in the amount of two-hundred-fifty-thousand dollars ($250,000.00), which contained the property description for the Grand Avenue property attached as "Exhibit A" and was recorded against the Grand Avenue property. (EX. D [Exh. "A"].)  On its face this Deed of Trust also references "exhibit A" as being in a third (3rd) location which is Redding California. (EX. D ¶1.1.)  By inadvertence or intent, Defendant GRAVITY thereby recorded a "bridge" loan that encumbered Plaintiff's family home in Huntington Park entitling Plaintiff to TILA disclosures pursuant to 15 U.S.C. §1601 et seq. (EX. D.)

38.     The Deed of Trust recorded on October 27, 2016 also contains a forged version of Plaintiff's signature as well as other forgeries.[15] (EX. D.) The California acknowledgement, claiming to be executed one year earlier on July 29, 2016 has a forged notary signature for notary Ricardo Magno (commission # 2123529) and forged notary seal which is a fraudulent recreation of MAGNO's actual notary seal. (EX. D; Dkt. 2 [Decl. Magno ¶4].)  MAGNO did *not* notarize a deed of trust on July 29, 2016. (Dkt. 2 [Decl. Magno ¶5].)

39.     On or about November 1, 2017 Plaintiff received a copy of a *recorded* Deed of Trust from the County Recorder. (EX. D.)

40.     On November 27, 2017, Defendant GRAVITY recorded a SUBSTITUTION of Trustee to Defendant CHICAGO TITLE. (EX. O.)

41.     On November 27, 2017, Defendant CHICAGO TITLE recorded a NOTICE of Default against the Grand Avenue property. (EX. C.)

### FIRST CAUSE OF ACTION:
*Quiet Title*
**(Against Defendants GRAVITY and DOES 1 through 5)**

42.     Plaintiff hereby alleges and incorporates herein by reference, each and every other paragraph contained in this Complaint as if the same were fully set forth herein.

---

[15] See FN 3 comparing Plaintiff's actual signature (EX. R) and the forged signature (EX. Y).

43.    Plaintiff is the owner of the Grand Avenue property by Grant Deed subject to his deed of trust to his beneficiary U.S. BANK *both* recorded on September 19, 2014. (EXs. A & N.)

44.    Plaintiff seeks to quiet title against all unknown adverse interests and against Defendant GRAVITY for a forged, fraudulent, and VOID Deed of Trust recorded October 27, 2017 in violation of California Penal Code §115c which prohibits recording of false documents known to be false. (EX. D.)

45.    Plaintiff seeks a declaratory judgment and injunctive relief; for this Court to rescind the NOTICE of default recorded November 27, 2017 and ORDER that no further documents may be recorded by Defendant TRINITY and/ or Defendant Chicago Title Company against the Grand Avenue property or the Wildwood Lane property and prohibiting any further actions to foreclose. (EX. D.)

**<u>SECOND CAUSE OF ACTION</u>**
***Slander of Title***
**(Against Defendants GRAVITY &THURMAN
and Does 1 through 5)**

46.    Plaintiff hereby alleges and incorporates herein by reference, each and every other paragraph contained in this Complaint as if the same were fully set forth herein.

47.    The tort of wrongful disparagement of title to property is defined as "[o]ne who without privilege to do so, publishes matter which is untrue and disparaging to another's property in land, chattels or intangible things under such circumstances as

would lead a reasonable man to foresee that the conduct of a third person as purchaser or lessee thereof might be determined thereby is liable for pecuniary loss resulting to the other from the impairment of vendibility thus caused." (Rest. Torts, § 624.) *Gudger v. Manton*, 21 Cal. 2d 537, 541, 134 P.2d 217, 220 (1943); Rest. Torts, § 624. The elements of the tort are (1) a publication, (2) without privilege or justification, (3) falsity, and (4) direct pecuniary loss. *Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC*, 205 Cal. App. 4th 999, 1000, 141 Cal. Rptr. 3d 109, 113 (2012).

48.     Malice is an element of this claim. *Fearon v. Fedora,* 169 Cal. 370, 380, 148 P. 200, 203 (1915).  Malice is defined as actual malice, meaning "that the publication was motivated by hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." *Kachlon v. Markowitz*, 168 Cal. App. 4th 316, 317 85 Cal. Rapt. 3d 532, 538 (2008). Here, the issue of *malice* turns on whether Defendant GRAVITY could have had any reasonable belief in the validity of the Deed of Trust they recorded on October 27, 2017. (EX. D; *Kachlon,* supra at 317 & 336.)

49.     Because Defendant GRAVITY is an out of state hard-money lender, that doesn't appear to have an agent for service in California, it is not clear that they even visited the property named on the deed of trust – the Wildwood Lane

property. (EX. D.)  However, the basic due diligence that a lender would do before doling out two-hundred-fifty-thousand dollars ($250,000.00) would tell them that the property described in exhibit "A," and the property *named* in the deed of trust, are in different cities. (EX. D.)  Based on the face of the document, there cannot be any reasonable belief in its validity pursuant to *Kachlon*. (EX. D; *Kachlon,* supra at 317 & 336.)

50.     A cursory internet search also shows that the Wildwood Lane property is a single-family home, already encumbered by a mortgage for four-hundred-three-thousand-seven-hundred-fifty-dollars ($403,750.00) and worth only about fifty-thousand dollars ($50,000.00) more than that; not warranting a bridge loan of two-hundred-fifty-thousand dollars ($250,000.00). (EX. D.)  On the other hand, the Grand Avenue property is a multi-unit home, passed from grandparents to grandson, relatively lightly encumbered with a mortgage for two-hundred-seventy-five-thousand-dollars ($275,000.00) in favor of U.S. Bank, and having substantial equity. (EX. N.)  It is also Plaintiff's home (aka "principle dwelling"), *not* Wildwood Lane.  While Plaintiff may fall of short of sufficiently alleging a multi-state RICO money-laundering scheme, the sloppy nature of this recorded deed of trust, along with a mistake that falls so clearly to the benefit of the careless lender, calls into question whether Defendant GRAVITY is complicit in this scheme and whether money was lent at all. (EX. D.)

51.    "Actual pecuniary loss" includes litigation expenses to remove the doubt cast upon [plaintiffs'] property rights which Plaintiff has incurred.  *Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC*, 205 Cal. App. 4th 999, 1030, 141 Cal. Rptr. 3d 109, 135 (2012).  Plaintiff is therefore entitled to the cost of this action, including attorney's fees, which is required to have this Deed of Trust and Notice of Default expunged from the Los Angeles County Records. (EXs. C & D.)

## THIRD CAUSE OF ACTION
### *Violation of TILA 15 U.S.C. §s 1601 et al*
### (Against Defendant GRAVITY and Does 1 through 5)

52.    Plaintiff hereby alleges and incorporates herein by reference, each and every other paragraph contained in this Complaint as if the same were fully set forth herein.

53.    The Truth in Lending Act (TILA) and the Real Estate Settlement Procedures Act (RESPA) are federal laws designed to protect consumers from fraud, deception, and abuse by requiring the creditor to disclose to the consumer certain information about the subject financing. (*U.S. Bank Nat'l Ass'n v. Naifeh,* 1 Cal. App. 5th 767, 779, 205 Cal. Rapt. 3d 120, 128-29 (2016); 15 U.S.C. §1601; 12 C.F.R. §1026.17-1026.23[2016].)  The purpose of this regulation is to promote the informed use of credit by requiring disclosures about its terms and cost. 12 C.F.R. §226(b).  12 CFR §226.32

54.     TILA address "only credit transactions secured by real or personal property used or expected to be uses as the principle dwelling of the debtor.[16]" 15 U.S.C. §1635.  While the identifying address on the front page of the Deed of Trust for the Wildwood Lane property identifies a *rental* property which is *not* Plaintiff's principle residence, the attached property description does identify Plaintiff's principle residence which is the property this deed of trust was recorded against and ultimately encumbers. (EX. D.) This mistake prevents Defendant GRAVITY from avoiding notice requirements under TILA when the property they are actually encumbering, is Plaintiff's primary residence. (EX. D; 15 U.S.C. §1601 et seq.)

55.     TILA Under the new Dodd-Frank Regulations requires two (2) disclosures to be delivered or placed in the mail no later than the third (3rd) business day after receiving the consumer's application. 12 C.F.R. §1026(e)(1)(iii); 15 U.S.C. §1631 et seq. The contents of these disclosure are detailed in 12 CFR 226.18 and they include the identity of the creditor (§226.18[a]), the amount financed (§226.18[b]), and the payment schedule (§226.18[g]). 12 CFR 226.18 (a)-(t). Regulation Z requires the lender to deliver two (2) copies of the notice of the right to rescind to each consumer entitled to rescind. 12 C.F.R. §226.23(b)(1)(2006.)

56.     The right of rescission is not one that Plaintiff can exercise here, since he did not receive the funds from this fraudulent deed of trust. (EX. D.) However, TILA

---

[16] Regulation Z defines "dwelling" as one that contains 1 to 4 units, whether or not that structure is attached to real property." 12 C.F.R. §226.2(a)(19)(2007)

provides two remedies for loan disclosure violations — rescission and civil damages, each governed by separate statutory procedures. *Merritt v. Countrywide Fin. Corp.,* 759 F.3d 1023, 1029 (9th Cir. 2014); see also 12 CFR §226.23.

57.    Civil liability under TILA is addressed in 15 U.S.C. §1640 which allows for *actual damage sustained by a person as a result of the failure.* The failure to provide Plaintiff with any disclosures is the direct cause of Plaintiff now owing two-hundred-fifty-thousand dollars ($250,000.00) on a fraudulent loan he did not originate. (EX. D; 15 U.S.C. §1640.)  Plaintiff is therefore entitled to this entire amount in damages from Defendant GRAVITY as well as his attorney fees and the cost of this action pursuant to 15 U.S.C. §1640(a)(3). (EX. D.)

58.    A TILA action for civil damages must be commenced "within one year from the date of the occurrence of the violation. 15 U.S.C. §1640 (e). Normally, the running of the limitations period for a TILA claim begins when the borrower executed their loan documents, because they could have discovered the alleged disclosure violations and discrepancies at that time. *Cervantes v. Countrywide Home Loans Inc.,* 656 F. 3d 1034, 1045 (9th Cir. 2011.)   However in Plaintiff's case, he first learned of the deed of trust after it was recorded on October 27, 2017; that is "the date of the occurrence of the violation," and the running of the limitations period should begin at that date. (EX. D.)

*//*

## FOURTH CAUSE OF ACTION:
### *Wrongful Foreclosure without Standing*
### (Against Defendant SPS and DOES 1 through 5)

59.     Plaintiff hereby alleges and incorporates herein by reference, each and every other paragraph contained in this Complaint as if the same were fully set forth herein.

60.     A pre-emptive challenge to the authority of a foreclosing beneficiary is only "preemptive" if the plaintiff alleges no "specific factual basis" for the claim. *Jenkins v. JPMorgan Chase Bank, N.A*., 216 Cal. App. 4th 497, 511-512, 156 Cal. Rptr. 3d 912, 924 (2013) citing *California Golf, LLC v. Cooper*, 163 Cal. App. 4th 1053, 1070 [78 Cal. Rapt. 3d 153] (2008).  The specified challenge that Plaintiff makes to the standing of Defendant GRAVITY is a fraudulent deed of trust which purports to be secured by Plaintiff's real property, but which was not executed by him and for which he did not receive any funds.  (EX. D.)

## FIFTH CAUSE OF ACTION:
### *Conversion in violation of Cal. Civ. Code §3336*
### (Against Defendant GRAVITY, THURMAN
### and Does 1 through 5)

61.     Plaintiff hereby alleges and incorporates herein by reference, each and every other paragraph contained in this Complaint as if the same were fully set forth herein.

62.     A conversion is an act of dominion wrongfully exerted over another's personal property, contrary to that person's rights in the property. *Messerall v.*

*Fulwider,* 199 Cal. App. 3d 1324, 1329, 245 Cal. Rapt. 548 (1988).  Pursuant to California Civil Code §3336, the elements of a cause of action for conversion are: (1) plaintiff's ownership or right to possession of the property at the time of conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages. *Messerall v. Fulwider,* supra at 1329.

63.    Plaintiff is the owner of the Grand Avenue property by grant Deed and Defendant GRAVITY has wrongfully exerted dominion over this right by claiming a nonjudicial power of sale through a fraudulent deed of trust recorded against the Grand Avenue property. (EXs. A &D; Cal. Civ. Code §2924 et al.)  In furtherance of the conversion, Defendant GRAVITY, on its own authority based on a VOID and fraudulent recorded deed of trust, has also SUBSTITUTED a foreclosure trustee which has subsequently recorded a NOTICE of Default by which Defendant GRAVITY claims the right to foreclose under California law. (EXs. C, D & O.)

64.    For Conversion to occur "[i]t is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use." . . .' " *Shopoff & Cavallo LLP v. Hyon,* 167 Cal.App.4th 1489, 1507 [85Cal.Rptr.3d 268] (2008.)  A conversion can occur when intangible property rights are taken represented by documents, and these cases are not physical

conversion, but essentially financial. *Welco Electronics, Inc. v. Mora,* 223 Cal. App. 4th 202, 309 [166 Cal. Rapt. 3d 877] (2014). Money can be the subject of a conversion when there is a specific identifiable sum concerned such as here, where the amount of two-hundred-fifty-thousand-dollars ($250,000.00) is claimed in the VOID and fraudulent recorded deed of trust as well as the recorded NOTICE OF Default. (EXs. Y & Z; *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP,* 150 Cal. App. 4th 384, 395 [58 Cal. Rapt. 3d 516].)

65.     Whether Defendant GRAVITY intended a wrongful conversion, or whether they were duped, Conversion is a strict-liability tort making Defendant's lack of knowledge or good faith immaterial. *Los Angeles Federal Credit Union v. Madatyan,* 209 Cal. App. 4th 1383, 1387 [147 Cal. Rapt. 3d 768].)

66.     Under the California Civil Code, Plaintiff is entitled to the full amount of the recorded Deed of Trust and the NOTICE of Default to be credited to him by Defendant GRAVITY as well as his attorney fees and the cost of this suit. Cal. Civ. Code §3336.[17]

*//*

---

[17] California Civil Code §3336 describes the detriment caused by the wrongful conversion of property to be:
   "First---the value of the property at the time of the conversion, with the interest from that time, or, an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted;  and
   Second--A fair compensation for the time and money properly expended in pursuit of the property."

## SIXTH CAUSE OF ACTION:
### *Violation of the Business and Professions Code §17200 et seq.*
### (Against Defendant SPS and Does 1 through 5)

67.     Plaintiff hereby alleges and incorporates herein by reference, each and every other paragraph contained in this Complaint as if the same were fully set forth herein.

68.     Plaintiff is informed, believe and thereupon allege that Defendant is doing business in the State of California, servicing mortgages on a mass scale for profit, and therefore is precisely the type of businesses B&P Code §17200 governs.

69.     Under the unlawful prong, "the UCL borrows violations of the other laws . . . and makes those unlawful practices actionable under the UCL." *Lazar v. Hertz Corp.*, 69 Cal.App.4th 1494, 1505 (1999).  Defendant GRAVITY is liable under B&P Code §17200, et seq. for the "unlawful" acts described herein which include failure to provide Plaintiff with Notices of a debt incurred against his primary residence pursuant to 12 C.F.R. §1026(e)(1)(iii) and15 U.S.C. §1631 et seq. and for conversion in violation of California Civil Code §3336 by a fraudulent and VOID recorded deed of trust in the amount of two-hundred-fifty-thousand dollars ($250,000.00) against the Grand Avenue property and attempted nonjudicial foreclosure. (EXs. C, D & O.)

70.     Plaintiff is informed, believe and thereupon alleges, that Defendant violated B&P Code §§ 17200 and 17500 in that their acts were unlawful as alleged herein.

## JURY DEMAND

Now come the Plaintiff, through its attorney, and hereby demands a trial by jury.

## PRAYER FOR RELIEF

DECLARATORY RELIEF – Quiet Title & Lack of Standing to Foreclose

1. Plaintiff's title quieted against any and all adverse interests including Defendant GRAVITY and all unknown Does excepting Plaintiff's current beneficiary U.S. Bank Trust Company, National Association (U.S. BANK) for two-hundred-seventy-five thousand dollars ($275,000.00).

2. For a Judicial Declaration that:

   a. the Deed of Trust recorded October 27, 2017 (Los Angeles County Recorder number 20171236130) is a VOID and fraudulent deed of trust and is not secured by the Grand Avenue property;

   b. that any claims or liens of Defendant Gravity Segregation LLC against the Grand Avenue property pursuant to the deed of trust recorded in the County Recorder's office, Los Angeles County, California, on October 27, 2017 (Los Angeles County Recorder number 20171236130) in the amount of two-hundred-fifty-thousand dollars ($250,000.00) are null and void and have no priority over any other liens or interest in the Grand Avenue property; and

   c. based thereon that Defendant Gravity Segregation LLC has no secured interest in the Grand Avenue property;

3. For a Judicial Order that the foreclosure sale of the property is permanently enjoined & also that Defendant Gravity Segregation LLC must rescind both the Deed of Trust recorded October 27, 2017 (Los Angeles County Recorder number 20171236130) and the NOTICE of Default recorded November 27, 2017 (Los Angeles County Recorder number 20171355339).

## DAMAGES SLANDER OF TITLE

1. Compensatory Damages in an amount to be determined by proof at trial;
2. Special Damages in an amount to be determined by proof at trial;
3. General Damages in an amount to be determined by proof at trial;
4. Punitive Damages in an amount to be determined by proof at trial;
5. Attorney's fees and costs.

## DAMAGES – TILA  - 15 U.S.C. §s 1601 et al

1. For actual damages pursuant to 15 U.S.C. §1640 (a)(1) which includes the full amount of the deed of trust for two-hundred-fifty-thousand-dollars ($250,000.00) against Plaintiff.
2. For attorney fees pursuant to15 U.S.C. §1640 (a)(3)

## DAMAGES CONVERSION

1. For actual damages pursuant to Cal. Civ. Code §3336 which includes the full amount of the deed of trust for two-hundred-fifty-thousand-dollars ($250,000.00) against Plaintiff.
2. For attorney fees pursuant to Cal. Civ. Code §3336

<u>DAMAGES – BUSINESS AND PROFESSIONS CODE §17200 et al.</u>

1. For actual, and punitive damages.

2. For attorney fees.


Dated:   January 8, 2018                    ADVOCATE LEGAL

.    */s/ Susan M. Murphy*    .
SUSAN M. MURPHY
Attorney for Plaintiff,
JUAN G. PENA